IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| West Town Bank & Trust, Rabon & Rabon, Inc., and MB Boardwalk Entertainment, LLC, | ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 2:19-3203-BHH ) |
| v. | ) **ORDER** ) |
| Burr Forman f/k/a McNair Law Firm, P.A., Lane Jefferies, David Hicks, and Henrietta Golding, | ) ) ) ) |
| Defendants. | ) ) |

This matter is before the Court upon the motion to dismiss filed by Defendants Burr Forman ("Burr Forman") f/k/a McNair Law Firm, P.A. ("the McNair Firm"), Lane Jefferies ("Jefferies"), and Henrietta Golding ("Golding") (collectively referred to as "the McNair Defendants").[1]  In their motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the McNair Defendants assert that the complaint filed by Plaintiffs West Town Bank & Trust ("West Town"), Rabon & Rabon, Inc. ("Rabon"), and MB Boardwalk Entertainment, LLC ("MB Boardwalk") (collectively referred to as "Plaintiffs") fails to state plausible claims against the McNair Defendants for violations of the Racketeer-Influenced and Corrupt Organizations Act ("RICO").  Specifically, the McNair Defendants assert that Plaintiffs fail to allege a pattern of racketeering activity by any of the McNair Defendants; that the alleged predicate acts are not related in any way and do not exhibit the same or similar purposes, results, participants, victims, or methods of commission; that Plaintiffs fail

---

[1] Defendant David Hicks also filed a motion to dismiss, but Plaintiff entered a stipulation agreeing to his dismissal, thereby mooting his motion.  (*See* ECF Nos. 17 and 23.)

to adequately allege a RICO enterprise; that Plaintiffs' second cause of action (against the McNair firm) fails because the RICO enterprise that Plaintiffs identify is identical to the allegedly criminal RICO enterprise that Plaintiffs identify in their other RICO causes of action; that Plaintiffs' first cause of action (against Golding and Jefferies) fails to allege an enterprise distinct from the individuals themselves; that Plaintiffs' third cause of action (against Golding and Jefferies) fails because the underlying claim fails, and because Plaintiffs have failed to allege an agreement between the individuals; that the RICO claims are untimely under the four-year statute of limitations; that the Court should decline to exercise supplemental jurisdiction over the state law claims; and that Defendant Burr Forman should be dismissed because it is a distinct corporate entity from the McNair firm and is not a South Carolina professional association. Finally, the McNair Defendants assert that if the Court declines to dismiss Plaintiffs' complaint with prejudice, then it should abstain under the *Colorado River* abstention doctrine based on the four other substantially similar lawsuits currently pending in state court. Plaintiffs oppose Defendants motion on all grounds but assert that they would agree to staying this matter until the trial of the initial case filed in Horry County, South Carolina.

After a thorough review of the parties' briefs and consideration of the issues presented, the Court agrees with the McNair Defendants that the allegations of Plaintiffs' complaint fail to state plausible RICO claims. Stated plainly, Plaintiffs' complaint simply cobbles together a number of unrelated discrete acts and lacks sufficient factual allegations to show the coordination or common purpose necessary to set forth a pattern of racketeering activity or to allege a RICO associated-in-fact enterprise. Accordingly, for the reasons set forth below, the Court grants the McNair Defendants' motion to dismiss

Plaintiffs' RICO causes of action, and the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## BACKGROUND

Plaintiff Rabon is a South Carolina corporation with its principal place of business in Horry County, South Carolina, and Plaintiff MB Boardwalk is a South Carolina limited liability company with its principal place of business in Horry County, South Carolina. (ECF No. 1 ¶¶ 2-3.) Prior to the events alleged in Plaintiffs' complaint, the Rabon family, which consists of mother, Peggy Jo Hardee Rabon ("Peggy"); Peggy's son, Jack Rabon ("Jack"); Jack's wife, Nichole Rabon; daughter, Karon Mitchell; and Karon Mitchell's husband, Kyle Mitchell, owned eleven properties in Myrtle Beach, South Carolina. (*Id.* ¶¶ 10-11.) Various banks held mortgages on certain of the properties, including the following: (1) BB&T held a first mortgage in the amount of $462,000.00 on Sea Palms #3; (2) Plaintiff West Town held a first mortgage on Shark Attack and Hammerhead Grill, a second mortgage on Sea Palms #3, and a second mortgage on Sea Palms #4, securing a $3,600,000.00 loan; and (3) TD Bank held a first mortgage on Sea Palms #1, Sea Palms #2, and Sea Palms #4 to secure a $260,000.00 loan. (*Id.* ¶¶ 16-19.)

In April of 2014, before the McNair Defendants were involved in this matter, TD Bank refused to renew its loan and called the note secured by Sea Palms #1, Sea Palms #2, and Sea Palms #4. (*Id.* ¶ 20.) Rabon could not pay the full balance, and TD Bank filed a foreclosure action in May of 2014. (*Id.* ¶¶ 21-22.) Peggy and Jack met with Defendant Golding, who agreed to represent them upon the payment of a retainer fee. (*Id.* ¶¶ 23-25.)

In early 2015, Rabon was in negotiations with an investor to purchase all of the Rabon properties. (*Id.* ¶ 38.) On February 11, 2015, Defendant Jefferies sent a proposal

3

to counsel for Rabon, specifying how the proceeds of the sale would be split and specifying "how much would be left to negotiate with West Town." (*Id.* ¶ 40.) According to Plaintiffs, Jefferies and counsel for Rabon agreed to send this proposal to West Town on February 11, 2015, but on February 12, 2015, Golding sent a different proposal to West Town, which "intentionally concealed" the fact that "the shareholders, all of whom were personal guarantors on the West Town note, were going to receive cash from the proposed disbursement." (*Id.* ¶ 44.) West Town did not accept the offer, and no transaction took place.

Instead, West Town filed a foreclosure action on its loan in April of 2015, seeking to foreclose on Sea Palms #3 and Sea Palms #4. (*Id.* ¶ 52.) Plaintiffs allege that Jack Rabon informed the McNair Firm in August of 2015 that an offer had been made for Sea Palms #3 and Brick House in the form of two separate contracts, and Jack Rabon stated that he wanted to conceal the sales price of the Brick House from the banks because it was unencumbered and he needed the money. (*Id.* ¶ 53.) Jefferies allegedly agreed to this strategy and copied Golding on the email chain. (*Id.* ¶ 54.) Plaintiffs allege that Jefferies and Golding never disclosed to West Town that Brick House was being sold, and Plaintiffs assert that the concealment of this and other information resulted in West Town agreeing to accept $7,500.00 for the release of its $3,600,000.00 mortgage on Sea Palms #3. (*Id.* ¶¶ 55-56.)

Plaintiffs allege that the separate contracts for the sale of Sea Palms #3 and the Brick House were made by a local nonprofit in the name of Friends of LBS, LLC, and that the value of both written contracts was a total price of $542,000.00 when the actual deal was for a total of $777,000.00 because $235,000.00 was to be paid to Jack Rabon and

4

others via a wire transfer and cash.  (*Id.* ¶¶ 61-65.)  Plaintiffs allege that Jefferies sent an email to the lawyer representing West Town, indicating the false sales price, and that Jefferies also made false representations to the Horry County Probate Court and to Plaintiffs in connection with the sales price.  (*Id.* ¶¶ 68-70.)  Plaintiffs also allege that Jefferies received a $10,000.00 kickback in connection with this scheme.  (*Id.* ¶ 85.)

According to Plaintiffs, in March of 2016, Jefferies indicated to Jack Rabon that the firm held $42,144.70 in its trust account on behalf of Rabon, but seven months later, Golding represented that only $38,725.95 remained in the trust account at the firm.  (*Id.* ¶¶ 192-93.)  Thus, Plaintiffs allege improper billing and management of trust funds by Defendants, and Plaintiffs claim that in 2019, the McNair firm finally provided them with a portion of the billing records from the time period between 2014 and 2017.  According to Plaintiffs, the billing records demonstrate that Defendant Golding perpetrated a cover up of the misappropriation of funds from Rabon.

Plaintiffs also allege that Jefferies threatened witnesses to keep them quiet about the alleged kickback scheme.  (*Id.* ¶¶ 195-210.)

Overall, Plaintiffs allege that West Town was the victim of two instances of bank fraud and two instances of attempted bank fraud, orchestrated by Defendants, and that Rabon and MB Boardwalk were secondary victims of the alleged bank fraud.  Plaintiffs further allege that MB Boardwalk was victimized by Defendants through the alleged improper withholding of escrow funds by Defendants and that Rabon was also victimized through Defendants' alleged improper billing and management of trust funds.  (*Id.* at pp. 1-3.)  Plaintiffs contend that these alleged predicate acts of racketeering activity "are related through their ultimate goal: enriching the Firm and other Defendants through the

5

various fraudulent schemes and illegal activity designed to conceal assets from creditors in order to convert the client's assets to their own use." (ECF No. 1 ¶ 213.) Plaintiffs further contend that the behavior of Defendants is not new or isolated, and Plaintiffs refer to an alleged Ponzi scheme orchestrated in 2009 by a partner at the McNair Firm, Mark McAdams, as well as a separate alleged scheme to defraud McNair clients, which occurred in 2015 and 2017 and was allegedly orchestrated by another partner at the McNair Firm, Frannie Heizer.[2]

Plaintiffs assert the following causes of action in their complaint: (1) conducting the affairs of the enterprise through a pattern of racketeering activity pursuant to 18 U.S.C. §§ 1962(c) and 1964(c) against Defendants Golding, Jefferies, and Hicks[3]; (2) investment and/or use of proceeds derived from a pattern of racketeering activity into an enterprise engaged in interstate commerce pursuant to 18 U.S.C. § 1962(a) against the McNair Firm; (3) RICO conspiracy to conduct the affairs of the enterprise through a pattern of racketeering activity in violation of § 1962(c), pursuant to 18 U.S.C. § 1962(d), against Defendants Golding, Jefferies, and Hicks; (4) as to Plaintiff West Town only, common law fraud against Defendants Golding, Jefferies, and Hicks; (5) as to Rabon only, breach of fiduciary duty against the McNair Firm and Defendant Golding; and (6) as to Rabon only, conversion of trust funds as to the McNair Firm and Defendant Golding.

## **STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) examines

---

[2] Neither McAdams nor Heizer are parties to this suit.

[3] As previously set forth in the first footnote, Hicks has been dismissed from this action.

the legal sufficiency of the facts alleged on the face of a plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Supreme Court has explained that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 678.

## DISCUSSION

"The RICO statute creates civil liability for those who engage in a 'pattern of racketeering activity.'" *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing 18 U.S.C. §§ 1962, 1964). A "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). An act of racketeering activity is commonly referred to as a predicate act, and "[t]he predicate acts must be related and must amount to or pose a threat of continued criminal activity." *Palmetto State Med. Ctr. Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997). The RICO act includes a list of criminal offenses that constitute "racketerring activity" or "predicate acts." *See* 18 U.S.C. § 1961. To recover civil RICO damages, a plaintiff must

allege that he or she was injured by reason of the racketeering activity. *Am. Chiropractic Ass'n v. Trigon Healthcare*, 367 F.3d 212, 233 (4th Cir. 2004).

The RICO act "does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (internal quotation marks omitted) (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). Therefore, despite the fact that courts read the terms of the statute liberally to "effectuate its remedial purposes," they also must "exercise caution" to ensure that "RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value; and that the multiple state and federal laws bearing on transactions . . . are not eclipsed or preempted." *Lyles v. Grant*, No. 6:17-cv-03245-AMQ-JDA, 2018 WL 4999782, *4 (D.S.C. Aug. 3, 2018) (quoting *US Airline Pilots Ass'n*, 615 F.3d at 317 (internal quotation marks omitted) (alteration in original)).

Pursuant to 18 U.S.C. § 1962(a), a person who has received income from a pattern of racketeering activity is prohibited from using the income in the operation of an enterprise engaged in commerce. *New Beckley Min. Corp. v. Internat'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1165 (4th Cir. 1994). To state a plausible claim pursuant to 18 U.S.C. § 1962(a), a plaintiff must allege that:

> (1) a defendant person (2) received income derived from (3) a pattern of racketeering activity (4) and invested the racketeering income or its proceeds (5) in the acquisition of an interest in or the establishment or operation of (6) any enterprise (7) engaged in, or the activities of which affect, interstate or foreign commerce.

*Id.* (quoting *May v. Peninger*, No. 2:07-cv-00864-CWH, 2008 WL 509470, at *11 (D.S.C.

Feb. 22, 2008) (citing 18 U.S.C. § 1962(a)).

Pursuant to § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Thus, to state a plausible claim pursuant to § 1962(c), a plaintiff must allege that "(1) a defendant person (2) employed or associated with (3) an enterprise, engaged in, or the activities of which affect interstate or foreign commerce, (4) conducts or participates in the conduct of the affairs of the enterprise (5) through a pattern of racketeering activity." *Lyles*, 2018 WL 4999782, *5 (quoting *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 279, 295-96 (D.S.C. 1999), and citing 18 U.S.C. § 1962(c)). "In short, § 1962(c) prohibits a person employed or associated with an enterprise from conducting that enterprise through a pattern of racketeering activity." *Id.* (citing *Palmetto State Med. Ctr.,* 117 F.3d at 148). "The enterprise must be distinct from the persons alleged to have violated § 1962(c)." *Palmetto State Med. Ctr.*, 117 F.3d at 148 (citing *New Beckley Mining Corp.*, 18 F.3d at 1163; *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 840 (4th Cir. 1990); and *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir. 1982).

Pursuant to § 1962(d), it is unlawful for anyone to conspire to violate any of the provisions of 18 U.S.C. §§ 1962(a), (b), or (c). "To allege a conspiracy to violate RICO, a plaintiff must allege (1) the existence of a conspiracy to participate in an enterprise; (2) that the enterprise affects interstate commerce through a pattern of racketeering activity; (3) that the defendant joined the conspiracy with knowledge of the purpose of the conspiracy; and (4) that during the time the defendant was a member of the conspiracy, defendant

9

knew someone would commit at least two racketeering acts in furtherance of the enterprise." *Lyles*, 2018 WL 4999782, *7 (citing 18 U.S.C. § 1962(d) and *Salinas v. U.S.*, 522 U.S. 52, 63-65 (1997)).

As previously set forth, Plaintiffs' complaint includes the following RICO-related causes of action: (1) alleged violation of § 1962(c) against Defendants Golding and Jefferies: (2) alleged violation of § 1962(a) against the McNair Firm; and (3) alleged violation of § 1962(d) against Golding and Jefferies.

I. **Plaintiffs's complaint fails to sufficiently allege a pattern of racketeering activity.**

After review, the Court first finds that Plaintiffs' complaint fails to sufficiently allege a pattern of racketeering activity to state plausible RICO claims against Defendants. As an initial matter, the Court agrees with Defendants that the alleged predicate acts of non-parties Mark McAdams and Francenia Heizer cannot form a basis for Plaintiffs' RICO claims. Leaving aside the fact that the statutory bar on RICO claims based on conduct actionable as securities fraud would appear to preclude Plaintiffs from relying on the acts of McAdams, and further leaving aside the fact that Heizier's alleged conduct would not appear to amount to "racketeering activity," the conduct of these non-parties simply has no connection to the alleged acts of Defendants in this case, other than the fact that McAdams and Heizer worked at the McNair Firm at various points in time. In other words, neither McAdams' alleged scheme nor Heizer's alleged scheme was in any way connected with Plaintiffs; nor did these alleged schemes use any methods similar to those allegedly employed by Golding and Jefferies or serve the same purposes. Ultimately, therefore, the Court finds that Plaintiffs cannot rely on these wholly unrelated acts to establish a pattern

of racketeering activity.

Additionally, to the extent that Plaintiffs rely on Golding's and Jefferies' alleged acts of perjury, grand larceny, and obstruction of justice to establish a pattern of racketeering activity, the Court agrees with Defendants that this conduct lacks any causal connection to Plaintiffs' alleged injury. *See Brandenburg v. Seidel*, 859 F.2d 1179, 1187 (4th Cir. 1988) ("[I]t is clear that a civil RICO complaint is vulnerable to a motion to dismiss if it fails to allege either an adequate injury to business or other property, or an adequate causal nexus between that injury and the predicate acts of racketeering activity alleged.") (internal citations omitted).

As to the acts of mail, wire, and bank fraud allegedly conducted by Golding and Jefferies, Plaintiffs blame Golding for alleged improprieties with their trust account, and they assert that Jefferies improperly concealed information from West Town and participated in otherwise improper and/or fraudulent real estate transactions. After review, the Court finds that these alleged acts of fraud are isolated and are not sufficiently related to assert the necessary *pattern* of racketeering activity. Stated plainly, the alleged acts of fraud had different methods of commission, different participants, different purposes, and different results, with Rabon allegedly losing money based on Golding's alleged conduct and gaining money based on Jefferies' alleged conduct, and with West Town allegedly suffering separately as a result of Jefferies' conduct.[4] *See H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237 (1989) ("In our view, Congress had a more natural and commonsense approach to RICO's pattern element in mind, intending a more stringent requirement than

---

[4] As discussed in greater detail below, these disparities also inform the Court's conclusion that Plaintiffs' complaint fails to adequately allege a RICO enterprise for purposes of any of Plaintiffs' claims.

proof simply of two predicates, but also envisioning a concept of sufficient breadth that it might encompass multiple predicates within a single scheme that were related and that amount to, or threatened the likelihood of, continued criminal activity."); *see also Marketing Prods. Mgmt, LLC v. Healthandbeautydirect.com, Inc.*, 333 F. Supp. 2d 418, 424 (D. Md. 2004) ("[F]acts indicative of both 'relatedness' among the predicate acts said to constitute the 'pattern of racketeering activity' and the 'continuity' of such acts must appear in a complaint asserting a cognizable RICO claim under 18 U.S.C. § 1964(c): 'A plaintiff must allege a continuing pattern and relationship among the defendant's activities by showing they had the same or similar purposes.'") (quoting *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 505 (4th Cir. 1998)).

Here, because Plaintiffs' complaint lacks sufficient facts to show the relatedness of the alleged predicate acts, the Court finds that Plaintiffs have failed to plausibly allege a pattern of racketeering activity for purposes of their civil RICO claims. *See Marketing Prods Mgmt.,* 333 F. Supp. 2d at 428 ("If relationships this thin between discrete frauds were sufficient to satisfy RICO's pattern requirement, every state law fraud claim would be converted into a RICO cause of action, a result forbidden by longstanding Fourth Circuit precedent.").

II.     **Plaintiffs' complaint fails to sufficiently allege a RICO enterprise.**

In addition to the foregoing, the Court finds that Plaintiffs' complaint fails to adequately allege a RICO enterprise. A RICO enterprise requires proof of three elements: (1) an ongoing organization; (2) with associates functioning as a continuing unit for a common purpose; and (3) which is an entity separate and apart from the pattern of activity in which it engages. *See United States v. Griffin*, 660 F.2d 996, 999 (4th Cir. 1981) (citing

*United States v. Turkette*, 452 U.S. 576, 583 (1981)); *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 477-78 (D. Md. 2009). Thus, a RICO enterprise requires the existence of collaboration or agreement between the members of the enterprise. *See Boyle v. United States*, 556 U.S. 938, 947 n.4 (2009); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010) (stating that the RICO enterprise element is a "close analogue" of the agreement element in antitrust law, and plaintiffs must "allege something more than the fact that individuals were engaged in the same type of illicit conduct during the same time period").

In the complaint, Plaintiffs allege that "defendants, and others known and unknown, including agents and employees of the defendants, formed an associated-in-fact enterprise." (ECF No. 1 ¶ 248.) Plaintiffs further allege that Defendants formed this enterprise "to execute and attempt to execute schemes to defraud clients and creditors of clients in order to convert the assets of their clients to their own use." (*Id.* ¶ 249.)

After review, the Court finds that Plaintiffs' complaint is devoid of facts demonstrating a sufficient connection or relationship between Defendants' actions. The complaint does not identify who Defendant Hicks is or where he worked. Moreover, although Golding, Jefferies, McAdams, and Heizer all worked for the McNair Firm at various points in time, neither Hicks nor McAdams were at the McNair Firm at the time of Golding's alleged conduct, and Jefferies left the firm in 2017.[5] As explained above, the alleged conduct of McAdams and Heizer is wholly unrelated to the alleged conduct of Golding and Jefferies.

---

[5] In short, the Court agrees with Defendants that "Plaintiffs are attempting to manufacture a RICO complaint against the McNair Firm by recounting every instance of alleged misconduct by the firms' attorneys in the last decade." (ECF No. 16-1 at 18.)

Moreover, although Plaintiffs allege that Golding and Jefferies both worked on certain real estate transactions involving Plaintiffs in 2014 and 2015, Plaintiffs do not allege sufficient facts showing that Golding's and Jefferies' alleged conduct was *coordinated*, or that Golding and Jefferies otherwise *functioned as a continuing unit for a common purpose*.[6] Instead, Plaintiffs essentially ask the Court to infer coordination based on the allegation that Golding made revisions to a proposal drafted by Jefferies, which Golding then sent to West Town, and the allegation that Golding and Jefferies were both copied on certain email chains. While these allegations perhaps show parallel or identical conduct, and perhaps even *conscious* parallel or identical conduct, "RICO does not penalize parallel, uncoordinated fraud," and, even accepting Plaintiffs' allegations as true, the Court finds them insufficient to show collaboration, coordination, or some express or tacit agreement between Golding and Jefferies to function as a continuing unit for a common illicit purpose. *Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 538 (D. Md. 2019); *see Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000) (rejecting vague allegations of a RICO enterprise and remarking that "every conspiracy to commit fraud that requires more than one person to commit" is not a RICO organization) (quoting *Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999)). Ultimately, the Court agrees with Defendants that Plaintiffs' failure to sufficiently allege that Defendants functioned with

---

[6] In their response to Defendants' motion to dismiss, Plaintiffs assert that their complaint adequately alleges an association-in-fact enterprise. (ECF No. 22 at 21.) Specifically, Plaintiffs state that they "alleged that the individual defendants formed the illegal enterprise for the (1) single purpose of defrauding the clients of the firm, by (2) the supervising attorney and her associate in the same firm who copy each other on the majority of incriminating emails, that lasted (3) for more than 4 years." (*Id.*) First, to the extent Plaintiffs now allege that the single purpose of the enterprise was to defraud *clients* of the firm, the Court notes that Plaintiffs do not allege that West Town was ever a client of the firm. Second, to the extent Plaintiffs attempt to re-characterize the complaint's definition of their alleged enterprise, Plaintiffs have not filed a motion to amend their complaint.

a common purpose and as a coordinating unit is fatal to their RICO claims.

Moreover, Plaintiffs' third cause of action against Golding and Jefferies for conspiracy pursuant to § 1962(d) fails not only because the pleadings do not state a plausible substantive claim against these Defendants under § 1962(c), but also because the complaint lacks sufficient facts to show *any* active conspiracy or agreement amongst Golding and Jefferies (or any other Defendants for that matter). The lack of well-pleaded allegations showing that Golding or Jefferies entered into an agreement to violate § 1962(c) is fatal to their conspiracy claim.

For the foregoing reasons, the Court finds that Plaintiffs' complaint fails to allege plausible RICO claims against Defendants.[7] Therefore, the Court grants Defendants' motion and dismisses Plaintiffs' first three causes of action. Having dismissed all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.[8]

## **CONCLUSION**

Based on the foregoing, the Court grants Defendants' motion to dismiss (ECF No. 16), and the Court dismisses Plaintiffs' first three causes of action for failure to state plausible civil RICO claims. The Court declines to exercise supplemental jurisdiction over

---

[7] The Court need not reach Defendants' remaining allegations of error, including their statute-of-limitations arguments. With regard to one issue, however, the Court simply notes that it agrees with Defendants that Burr & Forman, LLP is subject to dismissal. Plaintiffs do not respond to Defendants' arguments on this point, but it appears that Burr Forman, LLP is a distinct corporate entity from the McNair firm and is not a South Carolina professional association.

[8] Plaintiffs assert in response to Defendants' motion that if the Court dismisses their federal claims, "then Rabon & Rabon would agree to a remand on its state law claims, leaving only West Town Bank as the Plaintiff," which would provide the Court with diversity jurisdiction. (ECF No. 22 at 28.) This case was originally filed in federal court and was not removed from state court, and it is not possible for the Court to remand only one Plaintiff's claims to state court.

Plaintiffs' remaining state law causes of action, and this matter is hereby dismissed.

**AND IT IS SO ORDERED.**

/s/Bruce H. Hendricks
The Honorable Bruce Howe Hendricks
United States District Judge

November 9, 2020
Charleston, South Carolina